TERRY V. LEAVITT, ESQ.
State Bar No. 000295
JAMES T. LEAVITT, ESQ.
State Bar No. 012803
GRAVES & LEAVITT
601 South 6th Street
Las Vegas, Nevada 89101
Phone: (702) 385-7444 Facsimile: (702) 385-1178
terry@leavittbk.com, laura@leavittbk.com, james@leavittbk.com
Proposed Attorney for Debtor-in-Possession

E-Filed on:
5/31/2013

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re:   PHILIP A. VARELA,
         ERINN R. VARELA

         DEBTOR(S).

BK-S-08-22030-BAM

CHAPTER 7

Date: June 11, 2013
Time: 2:30 p.m.

**RESPONSE TO TRUSTEE'S MOTION TO DENY COMPENSATION TO THE LAW OFFICE OF COREY J. HILTON AKA COREY HILTON, ESQ.**

COMES NOW, TERRY V. LEAVITT, ESQ. and JAMES T. LEAVITT, ESQ. of the firm GRAVES & LEAVITT, representing COREY J. HILTON, Esq. (hereafter "Mr. Hilton") In the above-named motion hereby responds to the Trustee's allegations and asks that the court deny trustee's motion based upon the following:

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **Background**

In December of 2009, Mr. Hilton was approached by Mr. & Mrs. Varela (hereinafter "Debtors") to represent them in a personal injury case. The Debtors were dissatisfied with their counsel at the time, Mr. Leslie Stovall, Esq. and asked Mr. Hilton to substitute into their case as is set forth in his affidavit attached hereto. At that time, Mr. Hilton was not informed that his

clients were involved in the instant bankruptcy action. Mr. Hilton proceeded to work on the personal injury matter unaware of the pending bankruptcy action or his responsibility to be appointed as special counsel in that action. Mr. Hilton is an experienced personal injury attorney but has very limited experience with the Bankruptcy Court. He first became aware that his clients were Debtors in a bankruptcy October 11, 2010. Mr. Hilton first received and reviewed an email from Trustee, Brian D. Shapiro (hereinafter "Trustee") dated 10/11/2010. At that time, he instructed his staff member, Claudia Munoz, to forward the information that the Trustee requested. Mr. Hilton has since become aware that Ms. Munoz forwarded that information to the wrong email address. Shortly after receiving the above dated email, Mr. Hilton spoke with the Trustee directly about the information he requested. As a result of this conversation, Mr. Hilton erroneously believed that the Trustee would file the motion employing me as Special Counsel.

The Trustee has gone out of his way to aid Mr. Hilton and notify him of those requirements and duties he owes to the debtor's bankruptcy estate. However, due to a combination of ignorance of bankruptcy requirements and procedures, unfortunate inter-office communication, and a failure to implement proper office procedures, the full ramifications of the Trustee's aid and frustrations were not readily apparent to Mr. Hilton until the filing of the instant motion and subsequent consultation with the undersigned bankruptcy counsel regarding said motion. Mr. Hilton accepts responsibility for his unfamiliarity with bankruptcy law and the disorganization of his office. Mr. Hilton has taken subsequent steps to remedy the problems within his firm.

This being the case, Mr. Hilton intends to file a Motion to be appointed *nunc pro tunc* as special counsel which will allow him to file an amended, properly noticed and served, application for compensation. Furthermore, Mr. Hilton seeks to adjust his fees to compensate the Trustee for the costs and expenses he has incurred due to Mr. Hilton's oversights. As such, Mr. Hilton asks this court to deny Trustee's motion or in the alternative, grant it in part, to apply only

to those amounts necessary to compensate the Trustee and the estate for those costs and expenses incurred in bringing this issue to Mr. Hilton's and the Court's attention.

The Trustee stated in his motion referring to Mr. Hilton that "You can lead a horse to water, but you can't make him drink". On advice of his bankruptcy counsel, Mr. Hilton has become aware of being in the presence of "water" and asks for the opportunity to "drink" deeply.

II. **Statement of Facts**

The statement of facts is substantially similar to those stated by the Trustee's motion. For additional details, see Exhibit 1, the Declaration of Cory J. Hilton attached hereto and filed contemporaneously.

III. **Legal Argument**

The Trustee has argued that Mr. Hilton should be denied all of his fees due to the Court imposed deadline to properly file and notice a request for an administrative expense by 5/6/2013. The Trustee used as justification for the administrative claims date bar 11 U.S.C. § 503. 11 U.S.C. § 503(a) reads:

> An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

Here, while the claims date has passed, Mr. Hilton is prepared to file an application to be employed by the estate on a *nunc pro tunc* basis. As such, under 9th circuit law, he will have to show that he has a satisfactory explanation for his failure to receive judicial approval and that he has benefited the bankruptcy estate in some significant manner. *In re THC Financial Corp.* 837 F.2d 389, 392 (9th cir. 1988). Such shall be stated in the forthcoming application for employment.

Being that the Trustee previously asked the Court to approve the settlement that Mr. Hilton delivered in the personal injury case and has stated no objection to it, it is clear that Mr. Hilton has benefited the bankruptcy estate in a significant manner in the amount of $135,000.00. It would be manifestly unjust to deny Mr. Hilton any compensation for this significant benefit he has earned for the bankruptcy estate. Rather, it is more reasonable and *just* to subtract from Mr. Hilton's fee the amount of the costs and expenses that the Trustee has expended from the estate

due to Mr. Hilton's admitted oversights of which he has since remedied and seeks to remedy herein.

Additionally, the Trustee has argued that Mr. Hilton is not entitled to any compensation because he has not been employed under 11 U.S.C. § 330(a)(1). The Trustee alleges that Mr. Hilton was aware of the requirement that he was required to be employed and that the Trustee was willing to employ him. While this is true, Mr. Hilton believed based on representations from his law clerk, Brenda Dunsmore, that he had already been employed. Rather than ignoring the Trustee's multiple requests, he has only recently become aware of them since reorganizing his office. It was due to his reliance upon Ms. Dunsmore's previous experience in bankruptcy that his Application for Compensation was not properly noticed or served. Indeed, had he known that he was not already employed, he would not have filed the above mentioned Application for Compensation. Mr. Hilton hopes to further remedy these oversights by filing his Application to be employed as Special Counsel *nunc pro tunc*.

CONCLUSION

As a result of Mr. Hilton's work in settling the personal injury action, the bankruptcy estate has gained a benefit of $135,000.00, which is the only asset in this case. Mr. Hilton has worked diligently in settling the case and feels that he got the maximum that could be obtained for the Debtors and the Estate.

Mr. Hilton apologizes for his inexperience in bankruptcy matters that has resulted in unnecessary work for the Trustee. Mr Hilton also apologizes for the breakdown of communication that resulted in unnecessary delay in the closing of this case. Mr. Hilton understands that he bears ultimate responsibility for the actions of his office and apologize to the court for any failings therein.

If the court is willing to allow Mr. Hilton to present a properly noticed and served application for appointment as special counsel *nun pro tunc* together with a properly noticed and served application for compensation, he would be willing to have any eventual fee reduced by those amounts that have been expended by the Trustee as a result of the failures of himself and

his office. Mr Hilton does this so as to minimize or eliminate any prejudice to the estate as a result of his actions and failure to act.

DATED this 30th day of May 2013.

                              GRAVES & LEAVITT

                              By: _____
                              JAMES T. LEAVITT, ESQ.
                              Nevada Bar No. 012803
                              TERRY V. LEAVITT, ESQ.
                              Nevada Bar No. 000295
                              601 S. 6th Street
                              Las Vegas, Nevada 89101
                              (702) 385-7444

# Exhibit "1"

**DECLARATION OF CORY J. HILTON, ESQ.**

STATE OF NEVADA)
) ss:
COUNTY OF CLARK)

CORY J. HILTON, being first duly sworn, deposes and says:

I.

That I am an attorney and counselor at law, admitted to practice in the State of Nevada.

II.

That my primary area of legal practice is personal injury law and my experience with the procedures and practice of bankruptcy law is limited.

III.

That on or about 12/22/2009, I was contacted by the Debtors to represent them in a personal injury action. The Debtors expressed dissatisfaction with their previous personal injury attorney, Leslie Mark Stovall, Esq. The debtors signed a retainer agreement with my firm on 12/22/2009. I was unaware of my clients as debtors in a bankruptcy until 5 to 7 months after being retained by the debtors. I have reviewed my records and have found no evidence of the letter to me dated 6/21/2010 from Mr. Stovall to myself and copied to Brian D. Shapiro (hereinafter "Trustee").

IV.

That I received and reviewed an email from Trustee dated 10/11/2010. At or about that time, this was my first information that my clients were Debtors in a bankruptcy action. I asked a staff member, Claudia Munoz, to forward the information that the Trustee requested. I have since become aware that Ms. Munoz forwarded that information to the wrong email address. Around the time of receiving this email, I spoke with the Trustee directly and told him that I was

sending this information. I came away from this conversation believing erroneously that the Trustee would file the motion employing me as Special Counsel.

### V.

That at the time of the letter from Trustee dated 1/13/2011 (as referenced in Trustee's Declaration paragraph 14), requesting a case update, Ms. Munoz was responsible for opening office mail, email from the office's general email account, email from my personal account and bringing important information to my attention. At that time, Ms. Munoz did not make me aware of this letter or its contents.

### VI.

That the email from Trustee requesting an update dated 1/14/2011 (as referenced in Trustee's Declaration paragraph 16) was sent to the office's general email account which Ms. Munoz was also responsible for reviewing. At that time, Ms. Munoz did not make me aware of this email message.

### VII.

That at the time of the 4/7/2011 email from Trustee (as referenced in Trustee's Declaration paragraph 17), I was made aware of the request from the Trustee asking for my cooperation and was told that this information had not already been sent to him. I immediately responded on 4/8/2011 via letter by providing my retainer agreement, the status of the case, information on an offer of judgment I had made to the Defendant, and the date of a scheduled mediation.

///

///

///

### VIII.

That as set forth in Trustee's Declaration, he made multiple follow-up attempts which were sent to my general email and not forwarded to me by my staff. As a result, I was still not aware that I had not been appointed as Special Counsel by the Trustee.

### IX.

That by 5/2/2012, I understood that I had a problem with the Bankruptcy aspects of this case and I turned the matter over to a law clerk, Brenda Dunsmore, who represented that she had extensive previous experience with Bankruptcy matters while working for Barry Levinson, Esq. As such, I put her in charge of handling this matter and cooperating with the Trustee. At which time, I became aware of the email dated 5/2/2012. Ms. Dunsmore had made me aware of her conversation with the Trustee's office and had made representations to me that I had indeed already been appointed as Special Counsel. I instructed Ms. Dunsmore to respond to the email dated 5/2/2012 via letter. My instructions were misinterpreted by Ms. Dunsmore and she instead forwarded to the Trustee a standard, signature stamped, letter of representation by mistake. I was not made aware of this particular mistake until recently.

### X.

That on or about 10/12/2012, I met with the Trustee at his office and spoke with him about the details of the settlement and the case. At that time, I provided confirmation of the amounts received in the settlement and the Trustee made a verbal demand for the settlement funds followed by a letter dated 10/18/2012. I promptly replied with a letter dated 10/25/2012 notifying the trustee that I would comply with his demand on or before 10/31/2012. I complied with the Trustee's demand by turning over the settlement funds from my trust account on or about 10/31/2012.

### XI.

That after I turned the settlement funds over to the Trustee, I relied upon Ms. Dunsmore to file my Application for Compensation, still believing that I had already been appointed as Special Counsel. I relied upon her to properly notice and serve the application to my detriment, and I was unaware that this had not been done properly until recently.

### XII.

That Ms. Dunsmore is no longer in my employ and Ms. Munoz has been reassigned to non-legal tasks. I have diversified the responsibilities of my practice to individuals such as Mr. Mel Grimes, Esq. and other attorneys with extensive experience in office management in an effort to prevent these type of situations from reoccurring.

### XIII.

That on 3/5/2013, the Trustee filed a motion to set an administrative claims bar date. During this time, I had started the reorganization of my office and I was not notified by my staff of the motion, the hearing date, or the Trustee's email dated 3/8/2013. As such, I failed to appear at the hearing and was not aware of the Administrative Claims deadline until it had passed.

### XIV.

That as a result of my work in settling the personal injury action, the bankruptcy estate has gained a benefit of $135,000.00, which to my knowledge is the only asset in this case. I have worked diligently in settling the case and feel that I got the maximum that could be obtained for the Debtors and the Estate. I apologize for my inexperience in bankruptcy matters that has resulted in unnecessary work for the Trustee. I also apologize for the breakdown of communication that resulted in unnecessary delay in the closing of this case. I understand that I bear ultimate responsibility for the actions of my office and apologize to the court for any

failings therein. If the court is willing to allow me to present a properly noticed and served application for appointment as special counsel *nun pro tunc* together with a properly noticed and served application for compensation, I would be willing to have any eventual fee reduced by those amounts that have been expended by the Trustee as a result of the failures of myself and my office. I do this so as to minimize or eliminate any prejudice to the estate as a result of my actions and failure to act.

DATED this _30th_ day of May 2013.

_____
CORY P. HILTON, ESQ.

SUBSCRIBED AND SWORN to before me
this _30th_ day of May 2013.

_____
NOTARY PUBLIC

CLAUDIA MUNOZ
NOTARY PUBLIC
STATE OF NEVADA
APPT. No. 00-63158-1
MY APPT. EXPIRES FEBRUARY 13, 2017

# Exhibit "2"

## AFFIDAVIT OF MELVIN GRIMES, ESQ.

STATE OF NEVADA    )
                   )ss:
COUNTY OF CLARK    )

    Your Affiant, MELVIN GRIMES, ESQ., swears and testifies under penalty of perjury as follows:

    1.    That I am over 18 years of age and otherwise competent to testify to the matters identified below;

    2.    I have personal knowledge of the facts stated herein, except to those matters stated to be based on information and belief and as to those matters I believe them to be true;

    3.    That I have been employed at the Law Offices of Cory J. Hilton during a time period that began approximately two (2) years ago up until October of 2012, and that during this time period I served as the Office Manager;

    4.    That as part of my responsibilities, I brought about significant changes in the office in terms of personnel and recall interviewing and hiring 6 new employees to assist in the firm;

    5.    That as part of my efforts, I wanted to assist Mr. Hilton in hiring individuals that had depth in terms of experience and education, which was accomplished;

    6.    That I am specifically aware that an individual named Brenda Dunsmore assisted Mr. Hilton in a matter known as Erin Varela and was aware that she worked in Mr. Hilton's office until the holiday season in December of 2012, when she took time off to take the Nevada State Bar exam;

7. That when I interviewed her, I was satisfied that she had experience and background to work in an office that maintained a litigation practice.

Further your Affiant sayeth naught.

MELVIN GRIMES, ESQ.

Subscribed and Sworn to before me this 30th day of May, 2013.

Notary Public in and for said County and State

CLAUDIA MUNOZ
NOTARY PUBLIC
STATE OF NEVADA
APPT. No. 00-63168-1
MY APPT. EXPIRES FEBRUARY 13, 2017

# CERTIFICATE OF SERVICE

1. On this 31st day of May 2013 I served the following document(s) (specify):
RESPONSE TO TRUSTEE'S MOTION TO DENY COMPENSATION TO THE LAW OFFICE OF COREY J. HILTON AKA COREY HILTON, ESQ.

I served the above-named document(s) by the following means to the persons as listed below: *(check all that apply)*

      **a.**    **ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

X    **b.**    **United States mail, postage fully prepaid**
              *(List persons and addresses. Attach additional paper if necessary)*

Brian D. Shapiro
Trustee in Bankruptcy
228 S. 4th St. suite 300
Las vegas, NV 89101

Philip A. & Erinn R. Varela
7206 Nordic Lights Dr.
Las Vegas, NV 89119

      **c.**    **Personal Service** *(List persons and addresses. Attach additional paper if necessary)*

I personally delivered the document(s) to the persons at these addresses:

    For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

    For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

      **d.**    **By direct email (as opposed to through the ECF System)**
              *(List persons and email addresses. Attach additional paper if necessary)*

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

      **e.**    **By fax transmission**
              *(List persons and fax numbers. Attach additional paper if necessary)*

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

    f.    **By messenger** *(List persons and addresses. Attach additional paper if necessary)*

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service. *(A declaration by the messenger must be attached to this Certificate of Service)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed on: May 31st, 2013.

| James T. Leavitt, Esq. | /s/ James T. Leavitt, Esq. |
|---|---|
| **(Name of Declarant)** | **(Signature of Declarant)** |